CANADY, J.,
concurring in result only.
Although I agree that the certified question should be answered in the affirmative, I do not concur in the majority’s conclusion that the policy provisions at issue are unambiguous. Instead, I conclude that the resolution of the question presented by this ease is dictated by the rule that “[a]m-biguous coverage provisions are construed strictly against the insurer that drafted the policy and liberally in favor of the insured.” Fayad v. Clarendon Nat’l Ins. Co., 899 So.2d 1082, 1086 (Fla.2005).
The clause at issue provides coverage for advertising injuries arising from “[ojral or written publication of material that violates a person’s right of privacy.” An ordinary reader of this clause would reasonably be in doubt concerning whether the violations covered by the clause must be based on the informational content of the material that is published or may be based on the physical intrusion of the material.
The existence of two different senses in which the noun “material” is commonly used contributes to the ambiguity. One sense of “material” denotes a physical object: “[t]he matter of which a thing is or may be made.” 1 Shorter Oxford, English Dictionary 1723 (6th ed.). This sense of the term has nothing to do with informational content. Another sense of “materi *1010 al” is used to identify “information, evidence, ideas, etc., for use in writing a book or script, drawing a conclusion, etc.” Id. at 1724. This sense of the term has everything to do with informational content.
The ambiguity is compounded by the existence of two senses in which the noun “publication” is commonly used. “[Pjubli-cation” may denote “[t]he action of making something generally known” — a definition which points to informational content. 2 Shorter Oxford English Dictionary 2395 (6th ed.). The term also may denote “[t]he process of producing and issuing ... printed or reproduced matter” — a definition which focuses on the physical object disseminated. Id.
When reference is made to a “written publication of material that violates a person’s right of privacy,” an ordinary reader will not — unless sufficient contextual clues are present — understand with certainty whether the reference is to a violation caused by the intrusion of the writing as a physical object, by the informational content of the writing, or by either. The relevant context here does not provide an ordinary reader with a sufficient basis for rejecting the reasonable possibility that “written publication of material” denotes the physical object received when a fax transmission is disseminated and that the policy therefore covers privacy violations based on the intrusion of such a physical object. Neither does the context provide adequate grounds for rejecting as unreasonable a reading which limits the meaning of “written publication of material” to information or ideas — that is, to the informational content that is published and causes a privacy violation.
Given the different relevant senses in which “material” and “publication” are commonly used and the lack of a sufficient contextual basis to guide the ordinary reader to an unequivocal meaning of the policy provision, the plain meaning rule does not provide a persuasive basis for deciding the question presented here. Since the reading of the policy advocated by Penzer, the insured, is not a reading that an ordinary reader would reject as unreasonable, Penzer’s reading must prevail.